Next case, Golf Oral Argument, People v. Thompson There was a private party at the Icebox Club in Carbondale, IL. Mr. Thompson was there as were many, many other people. Although the club did not serve alcohol, many people brought their own alcohol. Now, about 1.15 in the morning, someone reported that they were towing cars off of a lot next door. People filed out into the parking lot and into the street to move their cars. Over a very short period of time, five or ten minutes, the crowd exited the club, stood in the parking lot. Some of the people stood around talking. Some of them were moving their cars. Some people left for the liquor store. Others decided it would be a good idea to fight. These fights, there were several fights that occurred in different areas. They moved around the parking lot, the street, the sidewalk. In fact, there's a cell phone, about one minute of cell phone video that was admitted at trial. And that shows the crowds. It shows the fighting, the chaos that was going on. It also shows the lighting conditions. There were street lamps, but there was no extra lighting in the parking lot. There wasn't big lights in front of the club, extra lights in the parking lot or anything. It was just street lamps. By the time the police arrived, which, as I said, about ten minutes after everybody came out of the club, there was a crowd of at least 50 people, and that was by the time the police arrived. I think it's safe to assume that maybe some people heard the sirens and took off. So there were at least 50 people. The crowd was noisy and uncooperative. And some described it even as being riot conditions. Unfortunately, during this chaos, Orlando Montclair was killed. And of all the people in the parking lot that night, the state chose to prosecute Mr. Thompson for Clark's death, along with his co-defendant, Patrick Green. The jury found Mr. Thompson guilty, but the evidence simply isn't there. First of all, there were several witnesses who were also in the parking lot that night, but most of them contributed absolutely nothing to the state's theory that Mr. Thompson stabbed Clark. It was Marcia Adams. She said that she argued verbally with Mr. Thompson that night, but she never did see Mr. Thompson and Clark fighting. So her testimony doesn't support the state. Cameron Richardson, he saw Patrick Green and Clark fighting. He watched the fight for about five or ten minutes, then he left and went into his own fight. He doesn't support the state's theory. Jeremy Clark, who is Orlando Clark's cousin, saw Green and Clark fighting, but then he lost track because he too went and got involved in his own fight. The next time he saw Clark was after Clark had been stabbed. He never even saw Mr. Thompson fighting with Clark. Tysia Gibbs, she saw Green and Clark fighting, but she specifically said that although Mr. Thompson headed toward Clark and Green, he got surrounded by a whole bunch of people and he never made it to the fight. She also said she never saw him pull a weapon. Timothy Oakes, who is also Clark's cousin, saw Clark and Green fighting. Then he too got involved in another fight of his own and did not contribute anything. There were two people that kind of did. One of them is Courtney Williams, who again is Clark's cousin. He claims that Mr. Thompson got out of Green struck with a black chrome blade. He then did some other things. He made jamming motions and Clark fell on the ground. Courtney's testimony was very problematic, however. He claims that while he was watching Mr. Thompson and Clark fighting, he was also trying to break up a bunch of other fights. So that's a little far-fetched to believe. Marcia Adams said that it was so K.I. She couldn't identify anybody in the fights, but yet Mr. Williams was breaking up a fight and watching what Mr. Thompson was doing. Also, he didn't come forward with any information about the fight, even though it was his own cousin that was killed, until like 12 days later. Regina LaBotte was Clark's girlfriend. She said that she saw Green and Clark fighting. She saw Mr. Thompson join the fight, and she saw Mr. Thompson stab Clark. Sounds like a pretty good witness, except that when you get down to it, the person that she described as stabbing Clark was not a defendant. She claimed that the defendant had on a blue and white striped polo shirt. Now, a polo shirt has a collar and three little buttons here. Everybody else in the defendant was wearing a white t-shirt. She was positive that the stabber had on a blue and white polo shirt. So right there, there's a whole lot of problems with her testimony. So there was really no state witness that didn't have problems that identified the defendant as being there. There was evidence that Mr. Thompson had a knife. That evidence is questionable. Courtney Williams said he saw Mr. Thompson get out of Green's truck with this black-brown blade, and he saw him swing at Clark. Well, Williams said he saw Mr. Thompson running across the parking lot chasing Clark, swinging this blade. Nobody else comes close to saying anything like that. He saw, allegedly, Thompson stab Pew. Again, he was engaged in his own battles over here while Clark was stabbed over here. It's hard to believe with all the chaos on the parking lot that he actually saw what he said he saw. Timothy Oates claimed that he saw Mr. Thompson get out of the truck with something silver in his hand. He assumed it was a knife because it wasn't as big as a crowbar. Well, neither is a cell phone or a hammer or a cigarette lighter. He also initially, when he talked to the police, which was three days after this incident, after the police went looking for him, he told the police the defendant did not have a knife. He only changed his story when he got to trial. Third, and for me this is the most convincing, Mr. Thompson did not have a single drop of Clark's DNA on his body, on his clothes. Let's assume for a minute that Mr. Thompson had a knife and he was engaged in a fight with Clark. Clark was stabbed seven times, and I think it's safe to assume that the cut to his femoral artery was the last cut because it was fatal. He would have dropped right away. Even with the six other cuts, they were cuts, they were bleeding. When you're fighting and handing in comment like these guys were in the parking lot, you have to have inadvertently touched each other. I mean, he didn't stab him with a sword so that he was three feet away. It was a knife. He was close. Even if it wasn't the blood from the femoral artery that got on him, he had to have had some blood because Clark's bleeding out of six other spots. But there was nothing, none of Clark's blood. So basically, Mr. Thompson was convicted on evidence that only two people claimed to have seen a stabbed Clark, and their testimony has a lot of problems. There was evidence that he had a knife. That evidence has a lot of problems, and where he allegedly engaged in this physical fight, but he had none of Clark's DNA on him. Now, given all of these problems, it seems to me that maybe the state thought, well, maybe there's a chance that we won't convict, that the jury won't convict Mr. Thompson, so we're going to add a little something else. We're going to add that he also stabbed this Antonio Pugh while he was out there. The evidence came from Courtney Williams, who, again, was engaged in his own fight. The state claimed that it was necessary to establish Mr. Thompson's presence at the scene. Mr. Thompson never denies that he was there. He admits that he was there. A bunch of other witnesses testified that he was there. So it wasn't necessary to establish his presence. The state claims it was necessary to support the testimony that Mr. Thompson had a knife. There were also two people that said he had a knife. They didn't need that evidence to support that theory. And it was not necessary to explain Pugh's blood on Mr. Thompson's T-shirt because, A, they didn't have to explain it. They could have just said he had blood on his T-shirt that did not belong to either himself or Mr. Clark. If this had been a conviction instead of an allegation, I'm pretty confident that it would have been ruled invisible under Montgomery because it's too similar. It's too prejudicial. Why could it stay out as a conviction and not as an accusation? There was, again, no evidence that Mr. Thompson stabbed Orlando Clark. To make matters worse, it seems to me that you're taking positions that are opposite to one another in that no one saw him stab, which is presumably you're arguing that there was no knife, and yet just prior to the stabbing for which we're talking about, he stabbed somebody else. So he either had a knife or he didn't have a knife. Well, I'm saying what the state's evidence was. The state's evidence was very shaky that he had a knife. I'm not saying that he stabbed Pew. He was accused by Courtney Williams of stabbing Pew. Pew never even bothered to come to trial, so I'm saying that Courtney Williams accused him of it. He did have Pew's blood on his shirt, but again, everybody in the parking lot was fighting. It was chaotic. He could have bumped into Pew. He could have, for purposes of this argument, stabbed Pew. That doesn't mean that he stabbed Clark. Again, he allegedly stabbed Pew one time, and he had Pew's blood on his shirt. He allegedly stabbed Clark seven times, one of them faintly, and he had no Clark's photo in him. That's a little hard to believe. Again, to make matters worse, the state talked about Pew in closing argument, and I'm going to stand on my brief for that issue and the sentencing issue. We're asking that Your Honor reverse his conviction and demand for a new trial. Are there any more questions? I don't believe so. Thank you, counsel. Counsel? Sure. Thank you. May I please have support? Counsel? Jennifer Camden on behalf of the people. The defendant has identified a couple of immaterial variances in witnesses' descriptions of physical objects and urges that these immaterial variances destroy these witnesses' credibility so completely that no rational jury could have believed those witnesses' testimony on the material points, on their testimony, which was corroborated by other witnesses, on the account of what happened in the parking lot that night. However, a rational jury could have believed these witnesses on the material points, and the defendant has not provided this court with any reason to overturn the jury's conviction. That evidence included testimony from two witnesses that they saw the defendant exiting Green's vehicle holding a knife or silver object in his hand and approach a fistfight that had already started between Clark and Patrick Green, and the testimony of two witnesses that they saw the defendant making jabbing or stabbing motions toward Clark when he was up against the wall, and the testimony of a third witness that, like those other two witnesses, said that these three men, defendant Clark and Green, were up against the wall next to or near the parking lot but not in the middle of this melee itself. And that's an important point because while there were several fights occurring in that parking lot, these three witnesses, Jeremy Clark, Courtney Williams, and Regina Labatt, testified that the showdown between these three men occurred separated and apart from that melee and that there was no one else around. All three of those witnesses testified to that, but there was no one else in the immediate vicinity of those three men, and they all identified the defendant as one of those three men. Ms. Kahn, if the evidence is that compelling, then what would be the purpose of putting in the first stabbing? Well, Your Honor, that evidence was inexplicably intertwined with the evidence that the defendant stabbed Clark. Williams testified that he saw the defendant exit Green's truck, approach the Green-Clark fight holding a blade. He testified that he saw a pew step between Green and Clark as though to break up the Green-Clark fight, that he then saw defendant stab pew in the upper torso, and that he saw a defendant then intervene in the Green-Clark fight. So the account that Williams saw defendant stab pew is part of the narrative of how defendant got out of the truck with an object in his hand that Williams described as a blade and approached that fight and intervened in the fight. And really, this evidence was admissible under several theories, both inside and outside the other crimes framework, because it was inexplicably intertwined with the evidence of the stabbing of Clark. Ordinary irrelevancy principles apply. These events all occurred within a matter of moments. Stabbing a pew was a natural part of the description of how defendant became involved in the Green-Clark fight, because pew was already trying to intervene and the defendant wished to intervene. Stabbing pew was a predecessor, a natural requirement of defendant's ability to intervene in that fight, which was his desire. He wanted to intervene in that fight. Pew was preventing him from doing so, so he stabbed him, and then he intervened in the Green-Clark fight. The evidence was also admissible inside the other crimes framework under three theories, as part of a continuing narrative to prove common design, that the stabbing of the pew was part of the same transaction, and also as part of a continuing narrative to prove intent and motive for the same reasons, and also it was admissible, apart from the continuing narrative idea, to prove defendant's identity and presence at the scene with a knife. The defendant's reply brief argues that the pew evidence is not inextricably intertwined with the evidence that the defendant stabbed Clark, and perhaps the defendant's argument in the reply brief is similar to your question to me here, because the defendant says in the reply, the fact still makes sense without the evidence that the defendant stabbed Pew. It's possible, says the defendant, to produce a coherent narrative of what happened without that evidence. What the state could have argued, says the defendant, that the defendant approached the Green-Clark fight and intervened in it, and have deleted that evidence that the defendant stabbed Pew. But the question, when considering whether this evidence was admissible, or whether the court have used this discretion in admitting that evidence, isn't whether we can imagine some truncated or sanitized version of the facts, and whether those facts present a coherent narrative of what happened. The question is whether that other crime's evidence was truly separate, distinct, and disconnected of the evidence of the charged crime, and the state has argued that it was not separate, distinct, and disconnected, that it was a part of that continuing narrative. And the state, in its answer brief, cited cases showing that such evidence is admissible, where the other crime's evidence is a natural part of the narrative of how the crime occurred, or where the motive remains the same during the commission of the other crime, as the state has argued that it did here. The state is not required to present a watered-down version of events the Illinois Appellate Court held in People v. Rutland, which is cited in the People's answer brief. And even if this evidence is not admissible under a continuing narrative conception, it's still admissible to show the defendant's identity and presence in the parking lot with a knife, and his participation in the charged crimes. With respect to Defendant's Issue 1, the sufficiency of the evidence, the defendant argues that Labatt's identification of the defendant was not credible because she misdescribed his shirt. Labatt had known the defendant since he was a small boy. She'd been close friends with his mother for at least 16 years. If anything, this is a motive for her not to identify the defendant, but she did so. She actually identified the defendant twice. She identified him as having participated in the argument at Greene's vehicle between Greene and Adams, and then she identified him as being up against that wall, jabbing at Clark. The fact that she identified him the first time during this argument that he was having with Marshara Adams earlier in the parking lot increases the credibility of her second identification of the defendant. Also, nothing obstructed Labatt's view of those three men fighting, and again, they were separated from the other people in the general area. She testified she was certain that the man she saw jabbing at Clark was the defendant. She also testified that the shirt that she saw the defendant wearing had blood on the front of it. The defendant was arrested in a white shirt with blood on the front, and whether that shirt was a white T-shirt or a white polo shirt with blue lines on it, as she described, it's really an immaterial variance in view of the high degree of corroboration that her testimony had with respect to other witnesses' testimony. Again, three different witnesses testified that they saw defendant Clark and Patrick Greene engage in a fight up against a wall with no one else around them. And on that point, perhaps it's relevant that witnesses testified that of those two men, that it was defendant Greene that had Clark backed up against a wall, and that of those two men, it was Greene who was squarely facing off against Clark with defendant off to one side. So perhaps that explains, as defendant argues, that perhaps it's implausible that a defendant would not have Clark's blood on him, but perhaps the placement of those men explains why that was. And also on that point regarding the absence of Clark's blood on the defendant, Labatt testified that defendant got in one more jab and then ran away, even before Clark dropped to one knee. Now, if it is, as defendant supposes, true that that last jab was the jab to the femoral artery, then clearly Clark's blood loss had just begun and defendant ran away even before it weakened him to the point that he dropped to a knee. There are photos taken at the scene that are in the record on the heel showing some blood at that scene. But it's important to remember that that's not what the scene looked like when defendant ran away. It's a reasonable inference that there was substantially less if that injury had just been inflicted. And if Clark had not yet been weakened enough by it to have dropped to one knee before defendant ran away. Defendant supposes that Clark's blood or argues in the brief that Clark's blood spurted from that wound. But as people discussed in the answer brief, Clark's jeans and left shoe were soaked. When Labatt reached Clark, she didn't testify that she saw spurting blood. She testified that she saw that his pants were soaked with it. The emergency medical technician said that he only saw spurting after the jeans were cut away so that his wound could be tended to. Also, with respect to the fact that Williams did not give a statement right away, he testified that he was scared to do so. And people in the answer brief cited case say that a jury may credit such testimony. And that that delay does not necessarily destroy a witness's credibility. Timothy Oakes said that he saw a silver object. And he said that it was police who had used the word knife in their questioning of him. And he agreed because it was silver on the end. And finally, the idea and the color of this object is not a material point on which those witnesses must agree in order for the rest of their testimony to be credible. One point about defendants issues three and four. As people discussed in their answer brief, those issues are forfeited because they were not preserved in the court below. And the defendant, in his opening brief and again in the reply brief, does not acknowledge the forfeiture or present a plain error argument to this court. And so for that reason, the forfeiture must be honored because the defendant has not met his burden of proving the application of the plain error doctrine. I'd be happy to answer any further questions. I don't believe there are any. Thank you, Counsel. Thank you. Counsel? I know everyone says discreetly, and I hope that I am. Ms. Kamen talked about testimony that defendant got out of the vehicle with this something in his hand. There was testimony from defendant and from a mechanic and from several other people who knew Green's car that you could not open the door from a passenger side, from the inside of the car. So that testimony is thrown out the window right there. Ms. Kamen argues that they were fighting up against the wall. Clark ended up leaning against the wall. That's true. But I urge your honors to take a look at the pictures, at the photographs of the crime scene. It was up against the building wall. It was dark. I'm not pitch dark, but it was dark. Things couldn't be seen very clearly. But the fact that Labatt said he had a striped shirt on, those stripes must have either been big or dark because she claims she saw him in poor lighting. She claims that the state claims that evidence about Pugh was an important part of the narrative. No, it wasn't. Williams still could have said, I saw him get out of the car with something in his hand. I assumed it was a knife. And then he ran up to Clark. Pugh is not important at all, except to either prejudice the defendant. And the last thing, Williams said that he was afraid of defendants. He says that when he went to the police 12 days later, he took his attorney with him because he had charges pending. That's the real reason he didn't want to go to the cops. And that's all I have. Thank you so much for your time. Thank you, Counsel. We appreciate the briefs and arguments. Counsel will take the case under advisory. The court is recessed until 1 o'clock for further oral arguments.